Vermont Superior Court
Filed 12/15/25
Washington Unit

VERMONT SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-04798

| Jane Doe v. Norwich University et al |
|---|

## ENTRY REGARDING MOTION

Title:        Motion; Motion; Motion to Seal/Redact; to Proceed by Pseudonym; for Protective Order (Motion: 1; 2; 3)
Filer:        Mario Bernard Hankerson; Mario Bernard Hankerson; Mario Bernard Hankerson
Filed Date:        October 30, 2025; October 30, 2025; October 30, 2025

The motions are DENIED.

### Decision on Ms. Doe's 3 Motions to Seal, Proceed by Pseudonym,

### and for Protective Order

In this case, Plaintiff Jane Doe, a former employee/professor at Norwich University, has asserted in her amended complaint, 26 claims against Norwich University, Mr. Robert Berkey (former Norwich employee), and Good Measure Inc. (operator of the Good Measure Pub and Brewery) arising out of core allegations of sexual harassment and assault. Plaintiff's real name is not Jane Doe. She elected to proceed in this case under that pseudonym and, with her original complaint, filed 3 identical motions seeking permission to do so. She also seeks:

3. Entry of a permanent redaction/sealing order for:

     A. Plaintiff's home address and location data;

     B. Plaintiff's children's identifying information: names, ages, schools, and activities;

     C. Plaintiff's private medical/counseling details;

     D. Plaintiff's former campus/classroom offices, schedules, extensions, and job

     identifiers not germane to adjudication;

     E. Exhibits containing any of the foregoing.

4. Entry of a Protective order under V.R.C.P. 26(c) prohibiting disclosure or use of

sealed/confidential materials beyond this litigation.

In short, she proposes to litigate this case as a completely unidentified plaintiff against named defendants, who in addition will be subject to substantial limits on their free speech rights. She asserts in her motions and a supporting affidavit that doing so will avoid "[h]assessment, doxxing, embarrassment, and professional repercussions" as well as "[i]rreparable emotional harm and exposure of sensitive facts to her minor children and their peers via internet/social media search." She asserts without analysis that there is no legitimate public interest in her identity.

Ms. Doe's request to seal is properly considered under the Rules for Public Access to Court Records. The court assumes without deciding that the request to proceed under a pseudonym is as well. The overarching principle is that the "public has access to all judicial-branch case records, in accordance with the provisions of this rule, except as provided in Rule 6(b)." Vt. R. Pub. Acc. Ct. Rec. 6(a); see also Vt. R. Pub. Acc. Ct. Rec. 3(a) ("Except as provided in these rules or in statute, the public may inspect or copy all judicial-branch case and administrative records."). Rule 6(b) itemizes particular exemptions from access.

Rule 9 provides the procedure for limiting access to case records through a process of sealing. Potential bases for limiting access under Rule 9 are not limited to the exemptions at Rule 6(b). Rather, a party can support a requested redaction with reference to "any statute, administrative or court rule, court order or precedential decision providing for confidentiality with respect to the identified privacy interest(s)." Vt. R. Pub. Acc. Ct. Rec. 9(a)(3)(C); see *In re Sealed Documents*, 172 Vt. 152, 160 (2001) (noting common-law authority granted to courts to seal records). To determine whether to seal, the court employs the rigorous standards described in *In re Sealed Documents* and related case law. See Reporter's Notes (original and 2022 amendment), Vt. R. Pub. Acc. Ct. Rec. 9.

To warrant a seal, the court must find "by clear and convincing evidence, that good cause and exceptional circumstances exist for the restriction of public access." Vt. R. Pub. Acc. Ct. Rec. 9(a)(5). And any seal must be implemented in the "least restrictive" manner possible. Vt. R. Pub. Acc. Ct. Rec. 9(a)(5)(a). Those terms are further reinforced and defined by the strong constitutional right of access to court records set out in cases such as *State v. Densmore*, 160 Vt. 131, 133-35 (1993); see also *Press-Enterprise Co. v. Super. Ct. of Cal.*, 478 U.S. 1, 13-14 (1986)

(sealing must be "essential to preserve higher values and . . . narrowly tailored to serve that interest" (citation omitted)).

The court notes that Ms. Doe's goal—to sue in secret—is primarily served by her request to proceed under a pseudonym. The contemplated sealing order mostly appears to be intended to suppress collateral information that would nevertheless reveal her identity. Accordingly, the court addresses the request to litigate anonymously first.

Civil Rule 10(a) requires, in no uncertain terms: "In the complaint, the title of the action shall include the names of all the parties." V.R.C.P. 10(a). There is no exception in the civil rules. There is a good reason for that. As one court has explained:

> "[O]ne of the essential qualities of a Court of Justice [is] that its proceedings should be public." Rule 10(a) requires parties to a lawsuit to identify themselves in their respective pleadings. Courts have explained that Federal Rule of Civil Procedure 10(a) illustrates "the principle that judicial proceedings, civil as well as criminal, are to be conducted in public." "Identifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts." And, defendants have a right to confront their accusers. A plaintiff's use of a pseudonym "runs afoul of the public's common law right of access to judicial proceedings."

*Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) (construing the analogous federal rule) (citations omitted); see also *Doe v. Hill*, 141 F.4th 291, 293 (D.C. Cir. 2025) ("Requiring parties to litigate under their real names serves important values. Accurate party names allow citizens to evaluate the nature of the claims raised and the interests at stake, to assess 'the real-world aftermath of a suit,' and to determine for themselves whether 'justice was done.' Knowing the identity of parties also makes it easier for citizens to investigate abuses of the judicial process like judicial conflicts of interest and ex parte contacts, and it promotes the appearance of fairness." (citation omitted)); *Cajune v. Independent School District 194*, 105 F.4th 1070, 1076 (8th Cir. 2024) ("The use of fictitious names runs afoul of the public's First Amendment interest in public proceedings and their common law right of access thereto. Proceedings are only truly public when the public knows the identities of the litigants."); *Doe v. Trustees of Indiana University*, 101 F.4th 485, 491–92 (7th Cir. 2024) ("Why should a plaintiff be able to shield himself from public knowledge of his acts when throwing a harsh light on identified defendants? If there should be a difference, it ought to run the other way—as plaintiffs enjoy an absolute

privilege against claims of defamation for what they say in their complaints and briefs."). The interests favoring disclosure of the true identities of the parties to a lawsuit are weighty indeed.

Nevertheless, *in rare circumstances*, a party may appropriately be permitted to proceed under a pseudonym. See *Doe v. Trustees of Indiana University*, 101 F.4th at 492 (noting that it is per se error for a trial court to permit a party to proceed under a pseudonym without engaging "in the careful and demanding balancing of interests required in making this determination" (citation omitted)); *Megless*, 654 F.3d at 408 ("That a plaintiff may suffer embarrassment or economic harm is not enough. Instead, a plaintiff must show 'both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable.'" (citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188–89 (2d Cir. 2008) ("This requirement [naming all the parties], though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly."). Various courts, often with reference to each other, have developed nonexclusive sets of factors that may be consulted when determining if the balance of interests (the plaintiff's privacy v. prejudice to the defendant and public interest) weighs in favor of anonymous litigation. The prevailing list in the Second Circuit is as follows:

> (1) whether the litigation involves matters that are "highly sensitive and [of a] personal nature";
>
> (2) "whether identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties";
>
> (3) whether identification presents other harms and the likely severity of those harms, including whether "the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity";
>
> (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age;
>
> (5) whether the suit is challenging the actions of the government or that of private parties;
>
> (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;
>
> (7) whether the plaintiff's identity has thus far been kept confidential;

(8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;

(9) "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities"; and

(10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Sealed Plaintiff*, 537 F.3d at 189–90 (citations omitted). Though lists vary, they are nonexclusive and, functionally, the courts generally are conducting the same inquiry regardless of what list of factors controls. Compare, e.g., *Sealed Plaintiff*, 537 F.3d at 189–90 (2d Cir.), with *Hill*, 141 F.4th at 293 (D.C. Cir.); *Cajune*, 105 F.4th at 1077 (8th Cir.); *Megless*, 654 F.3d at 409 (3d Cir.).

There is no binding case law in Vermont setting forth the correct analysis when a plaintiff seeks to litigate anonymously. However, federal case law is generally consistent across circuits, and the court seriously doubts that the analysis should be any different in Vermont. The court thus relies on the authorities cited above upon considering Ms. Doe's request.

Consideration of applicable factors reveals nothing extraordinary about this case that might warrant the rare order permitting a plaintiff to litigate anonymously. First, the court understands that, to Ms. Doe, the subject matter of this lawsuit may seem highly sensitive and personal. However, civil suits with allegations about sexual harassment, discrimination, and assault are litigated in the courts commonly without suppressing party names. See *Doe v. Trustees of Indiana University*, 101 F.4th at 492 ("Federal courts adjudicate thousands of sex-discrimination suits annually without concealing the plaintiffs' names."). To the extent that she hopes to keep the litigation secret so that she can control how her children may hear about it, that loss of control is nothing unusual. It is an ordinary incident of the transparent nature of civil litigation.

Second, while Ms. Doe proposes that revealing her identity might subject her to ridicule, retaliation, or opprobrium, the concern is highly speculative and there is no basis for concluding that any such retaliation would rise to the level of physical or emotional harm. See *Doe v.*

*Stegall*, 653 F.2d 186 (5th Cir. 1981) ("The threat of hostile public reaction to a lawsuit, standing alone, will only with great rarity warrant public anonymity.").

Third, Ms. Doe is not a child or for some other identified reason particularly vulnerable.

Fourth, proceeding by pseudonym likely would not achieve the goal of anonymity in any event. The allegations of the complaint are clear that many people in the Norwich community are well aware of the underlying circumstances, and a reporter for a student newspaper sought to interview her about them. There also has been prior, related litigation.

Fifth, there would be probable prejudice in allowing Ms. Doe to make serious allegations publicly against Defendants and others who are named while remaining anonymous herself.

Sixth, whatever legal issues this case may present, the court anticipates that the facts, sprawling in the complaint, are likely to be deeply disputed. Factual disputes of this sort heighten the public interest in the identities of the parties. This case plainly does not present the sort of pure legal question that might render the identity of a party less relevant.

On balance, there is no compelling reason to permit anonymous litigation here. Doing so would likely prejudice Defendants, and the public interest in the identity of the parties is significant. The request to proceed under a pseudonym is **Denied**.

With the request to litigate anonymously denied, most of the requests to seal or redact (and the related request for a Rule 26(c) order, lose any purpose. The exception is the request to keep secret "Plaintiff's private medical/counseling details," which the court presumes Ms. Doe would seek regardless whether she is permitted to litigate anonymously.

This request is **Denied at this time**. The court notes first that it is a completely generalized request. Ms. Doe cites nothing extraordinary about any particular medical/counseling records that might warrant secrecy. Moreover, this is precisely the sort of privacy that a plaintiff voluntarily surrenders when she chooses to file a case like this. See *Mattison v. Poulen*, 134 Vt. 158, 161 (1976) ("We agree that, by bringing an action for damages arising from the injuries the plaintiff claims to have suffered, the [patient] privilege is waived."); *Paquette v. State*, No. 196-3-17 Wncv, 2018 WL 11358604 (Vt. Super. Ct. Apr. 26, 2018) ("By filing this lawsuit, Mr. Paquette has placed his current and prior back injuries and related

treatment squarely at issue, and he has waived related privacy rights and privileges."); *Adams–Thompson v. Potter*, No. 755-11-15 Wncv, 2018 WL 11358771, *2 (Vt. Super. Ct. Mar. 29, 2018) ("Ms. Adams–Thompson certainly has privacy interests in her medical, employment, and educational records. However, by filing this lawsuit, which places those matters squarely at issue, she generally has waived related privacy rights and privileges.").

## ORDER

Ms. Doe's 3 Motions to Seal, Proceed by Pseudonym, and for Protective Order are **Denied**. Within 30 days, Ms. Doe shall refile any sealed filings or filings containing redactions consistent with this Order.

Electronically signed on 12/12/2025 6:18 PM pursuant to V.R.E.F. 9(d)

_____

Daniel Richardson
Superior Court Judge